## FOUTS v. FOUDRAY.

### No. 853.  Opinion Filed January 9, 1912.

#### (120 Pac. 960.)

1. **ESCROWS—Passing of Equitable Title—Deed in Escrow.** Equity treats things agreed to be done as actually performed,. and where real estate is sold under a valid contract, and the deed executed and placed in escrow, to be delivered at a future date on payment of the purchase money, evidenced by promissory note due on said day, the equitable title passes at once to the vendee.

2. **VENDOR AND PURCHASER—Destruction of Property—Liability of Vendee.** Where buildings are destroyed by fire, without the fault of either party, between the date of the contract of sale and the execution of the deed, and before the delivery thereof, the loss must be borne by the vendee, who holds the equitable title, as the vendor only holds the naked legal title for the use of the vendee.

3. **VENDOR AND PURCHASER — Rights of Parties — Deed in Escrow.** Where a debtor executed a deed, absolute in terms, to his creditor as security for the payment of a debt, with a contemporaneous parol agreement to reconvey on payment thereof, in a suit by said creditor to recover of defendant the purchase money due upon an executory contract of sale of the property, wherein he bound himself to deliver to defendant, through an escrow, a deed therefor on payment of the purchase price, when due, **held** that, after default in said payment, on a tender of said deed, he was entitled to recover.

(Syllabus by the Court.)

*Error from District Court, Kay County;*
*Wm. Bowles,. Judge.*

Action by Charles E. Foudray against Salem Fouts. Judgment for plaintiff, and defendant brings error. Affirmed.

*J. F. King,* for plaintiff in error.

*John S. Burger,* for defendant in error.

TURNER, C. J.  On May 8, 1907, Charles E. Foudray, defendant in error, sued Salem Fouts, plaintiff in error, in the district court of Kay county. His petition substantially states that prior to September 20, 1906, Hubert L. Bainum, being in-

debted to plaintiff, deeded to him as security for the debt lots 4 and 5 in block 1, in Virginia, Kay county, Okla., at which time it was agreed between them, in parol, that plaintiff would reconvey to him said lots on payment of said debt; that also on said date defendant, Fouts, being indebted to said Bainum, assumed the payment of said debt, and then and there executed to plaintiff his promissory note for $865.68, the amount of said indebtedness, due March 27, 1907, with interest, whereupon plaintiff and defendant entered into the following contract in writing:

"This agreement, made this 20th day of September, A. D. 1906, by and between Charles E. Foudray of Kay county, party of the first part, and Salem Fouts of Kay county, party of the second part, witnesseth: That the party of the first part, in consideration of one promissory note from the said party of the second part for eight hundred and sixty-five and 68-100 dollars ($865.68), bearing date September 20, 1906, payable March 25, 1907, and bearing interest at ten (10) per cent. per annum from maturity, has executed and placed in escrow with the State National Bank of Blackwell a deed to the following described real estate, situated in the county of Kay, territory of Oklahoma, to wit: Lots numbered four (4) and five (5) in block one (1) in the town of Virginia, according to the recorded plat thereof. Said deed to be surrendered to party of the second part when said party of the second part shall have fully paid the note hereinbefore described. Should said note not be paid, then deed shall remain with the State National Bank, subject to the order of party of the first part, and party of the second part forfeits all right to property herein mentioned. Party of the second part agrees to pay all taxes and keep one thousand and 00-100 dollars ($1,000.00) in insurance on said property, if possible, in some responsible company for the benefit of party of the first part. [Signed] Charles E. Foudray. Salem Fouts. Witnessed by Urban Tracey, E. P. Blake.

"I agree if Salem Fouts pays on note hereinbefore described, five hundred and 00-100 dollars, on or before date of due to grant him an extension of six months for payment of the balance. Charles E. Foudray."

That, pursuant thereto, plaintiff placed in said bank said warranty deed to said lots, conveying the same to defendant, together with said contract and note, with instructions to deliver said deed to defendant when said note was paid; that defendant

neglected to insure said buildings as required in said contract; that the same was, on October 22, 1906, destroyed by fire, while in his possession, in consequence of which said mortgage security is worthless; that defendant also failed to pay said note, or any part thereof. He tendered into court said warranty deed, and prayed judgment against defendant for the amount of said note and interest, and, in effect, for specific performance of said contract. For answer, defendant admitted the allegations in the petition, alleged that said buildings were destroyed (without fault of either as agreed), by reason of all of which, he says, there was no consideration for said note. Upon this agreed state of facts, there was judgment for plaintiff, and defendant brings the case here. The question for us to determine is whether he was entitled to recover on the facts as stated, and the inferences fairly arising therefrom.

The three instruments aforesaid, being part of one and the same transaction, construed together, in effect were a valid executory contract of sale, whereby plaintiff on that day, not only sold, but executed, to defendant a warranty deed to the property, pursuant to said contract. Said deed, in that it read "do by these presents grant, bargain and sell," was a sale *in praesenti,* and was executory only in the sense that the delivery and receipt of the purchase money agreed to be paid therefor should take place in the future. When this is the case, while the naked legal title remains in the vendor, the equitable title to the property at once passes to the vendee, and with all its attendant benefits and burdens; or, as stated in the syllabus of *Dunn v. Yakish,* 10 Okla. 388, 61 Pac. 926:

"Equity treats things agreed to be done as actually performed and when real estate is sold under a valid contract, the purchase money to be paid in part, and the deed executed at a future day, the equitable title passes at once to the vendee. * * * *"

And in 1 Pom. Eq. Jur., sec 368.

"In some respects, and for some purposes, the contract is executory in equity, as well as at law; but, so far as the interest or estate in the land of the two parties is concerned, it is regarded as executed, and as operating to transfer the estate from the

vendor, and to vest it in the vendee. By the terms of the contract, the land ought to be conveyed to the vendee and the purchase price ought to be transferred to the vendor; equity therefore regards these as done—the vendee as having acquired the property in the land, and the vendor as having acquired the property in the price. The vendee is looked upon and treated as the owner of the land; an equitable estate has vested in him commensurate with that provided for by the contract, whether in fee, for life, or for years. Although the vendor remains owner of the legal estate, he holds it as a trustee for the vendee, to whom all the beneficial interests have passed, having a lien on the land, even if in possession of the vendee, as security for any unpaid portion of the purchase money.    *    *    *    It follows, also, as a necessary consequence, that the vendee is entitled to any improvement, or increment, in the value of the land after the conclusion of the contract, and must himself bear any and all accidental injuries, losses, or wrongs done to the soil by the operations of nature, or by tortious third persons, not acting under the vendor."

This case is practically indistinguishable from *Dunn v. Yadish, supra.* Both were bottomned on contracts in legal effect the same, and called, in effect, for their specific performance. In that case, Yakish, in writing, sold and agreed to convey to Dunn, by general warranty deed, a house and lot in Oklahoma City for $1,000, $100 of which was cash in hand, the balance to be made in certain deferred payments, evidenced by promissory note. Possession was to be delivered January 1, 1898, and a warranty deed thereto was agreed to be executed February 1, 1898. After that time, Dunn commenced suit in equity against Yakish for specific performance of the contract, and alleged that the building was worth $550 and the lot $450; that after the contract was made, and plaintiff still in possession, said building was destroyed by fire; that on February 1, 1898, he had tendered her $100, which, with $100 cash paid at the time of executing the contract and a $250 mortgage assumed by him, aggregating $450, was all the lot was worth, and demanded a deed, which he said had been refused, and prayed the court for a decree, as stated. Upon the issues joined, the case turned upon the question as to which of the contending parties should suffer the loss of the building destroyed by fire. The court, after pronouncing the

contract one of absolute sale of real estate, with an agreement to convey at a future date on payment of the purchase money, said:

"In contracts of this kind between individuals, the vendee is, in equity, the owner of the estate from the time of the contract of sale, and must sustain the loss, if the estate be destroyed between the agreement and the conveyance, and will be entitled to any benefit which may accrue to it in the interim. This rule has become elementary, and is supported by all the text-writers, and practically all the courts.   *   *   *   If the equitable title passed to Dunn when the contract of sale was executed, then the loss occasioned by the destruction of the building by fire, without fault of the vendor, is the loss of the vendee, and he cannot refuse to comply with the contract on that ground. If, after the contract is entered into, and before the conveyance is executed, the buildings are destroyed by fire, the loss will fall on the purchaser. 1 Sug. Ven. c. 7, sec. 2; *McKechnie v. Sterling,* 48 Barb. [N. Y.] 330; 1 Pom. Eq. Jur. sec. 368; 2 Warv. Vend. 850; *Reed v. Lukens,* 44 Pa. 200 [84 Am. Dec. 425]; *Lombard v. Congregation,* 64 Ill. 482; *Snyder v. Murdock,* 51 Mo. 175."

And further in the syllabus said:

"Where a valid contract for sale of real estate has been entered into, the deed to be executed at a future day, it is no defense, in an action to recover balance of purchase money, that the estate has been diminished in value by the destruction of the buildings thereon by fire, unless it is shown that the vendor was in some way at fault in causing such fire. Where buildings are destroyed by fire, without the fault of either party, between the date of a contract of sale of the real estate and the time the conveyance is made, the loss must be borne by the vendee, who holds the equitable title, as the vendor only holds the naked legal title for the use of the vendee."

Further on this subject, 6 Pom. Eq. Jur. (section 859) says:

"Upon whom should the loss, as where the buildings are destroyed by fire, occurring between the date of the contract and the conveyance fall? Following out the rule of equity that 'as soon as the contract is finally concluded, although it is wholly executory in form,' there results by its operation an equitable conversion of the land and the purchase money, and the purchaser then becomes the equitable owner of the land, the conclusion can hardly be escaped that the loss should fall on the vendee.   *   *   *   Equity, from the moment the contract is binding, gives the vendee the entire benefit of the rise in value of

the land and of all subsequent improvements, and any other advantage that may accrue to the estate. If the vendee is owner in equity, so as to receive all increment, he should be considered owner, so as to accept the burden of any loss not due to the vendor's fault."

Speaking of these contracts, the court, in *Columbian Ins. Co. v. Lawrence,* 2 Pet. 25, 7 L. Ed. 335, said:

"While the contract subsists, the person claiming under it has undoubtedly a substantial interest in the property. If it be destroyed, the loss, in contemplation of law, is his. If the purchase money is paid, it is his in fact. If he owes the purchase money, the property is its equivalent, and is still valuable to him. The embarrassment of his affairs may be such that his debts may absorb all his property; but this circumstance has never been considered as proving a want of interest in it. The destruction of the property is a real loss to the person in possession, who claims title under an executory contract, and the contingency that his title may be defeated by subsequent events does not prevent this loss."

See, also, *Brewer v. Herbert,* 30 Md. 301, 96 Am. Dec. 582; *Vancouver Nat. Bk. v. Law & Co.* (C. C.) 153 Fed. 440; *Kuhn v. Freeman,* 15 Kan. 423; *Speicher v. Lacy,* 28 Okla. 541, 115 Pac. 271.

We are therefore of opinion that, the loss having occurred between the date of the contract and the time for the delivery of the escrow deed, at which time the transmission of the title would have been complete, the loss must be borne by the vendee, and his defense of no consideration is not well taken. It will not do to say that this contract was at an end when Foudray, after the default of Fouts, took the deed from escrow, as he had a right to do under that part of the contract, which reads, "Should said note not be paid, then deed shall remain with the State National Bank, subject to the order of party of the first part, and party of the second part forfeits all right to property herein mentioned," for the reason that defendant will not be permitted to defeat his contract by his own default. This was the holding in the *Yakish Case, supra.* There the contract read:

"It is further agreed that time is of the essence of this contract, and, unless said installments shall be paid as herein provided, this contract shall be void; otherwise," etc.

The court said:

"The next contention of the plaintiff in error is that, as he failed to pay the purchase money on the day it fell due, by the terms of the contract, he was released; or, in other words, a failure on the part of either the vendor or vendee to perform any requirement of the contract caused such contract to become noneffective and void. If the vendor had failed in any substantial part to comply with the terms of the agreement on her part, the vendee then might have elected to either treat the contract as void, or proceed to enforce it. But it is a well-established rule in equity that one will not be permitted to take advantage of his own laches or defaults to defeat the enforcement of a contract. Provisions for forfeiture in contracts are made for the benefit of the adverse party, and not for the benefit of the one who fails to perform his part. *Wilcoxson v. Stilt* [65 Cal. 296], 4 Pac. 629 [52 Am. Rep. 310]; *Mason v. Caldwell*, 5 Gilman [Ill.] 196 [48 Am. Dec. 330]; *Canfield v. Westcott*, 5 Cow. [N. Y.] 270."

We are therefore of opinion that the judgment of the lower court was right, unless, as is contended, defendant should not in effect be required to specifically perform his contract, where, as here, the transaction between Bainum and Foudray constituted simply a mortgage; and hence Foudray cannot convey him a good legal title.

Assuming, but not deciding, that said transaction was, in effect, a mortgage, and for that reason the lots could not be sold by Foudray, so as to pass the title, except pursuant to a judgment of a court of competent jurisdiction in conformity to Comp. Laws 1909, section 5921, and for that reason he cannot convey defendant a good title as urged, there is nothing in the contention, for the reason that, as the contract obligated Foudray, through the escrow, to deliver to defendant a deed only to the lots when the note sued on was paid, which he has offered to do and tendered into court; we are of opinion that Foudray, in making a tender of said deed, has lived up to the full measure of his contract, and that defendant must be compelled to accept the same as tendered, and pay the note sued on.

Finding no error in the record, the judgment of the trial court is affirmed.

All the Justices concur.